### HAYWARD *v.* ANDREWS.

1. The assignee of a chose in action cannot proceed in equity to enforce, for his own use, the legal right of his assignors, merely upon the ground that he cannot maintain an action at law in his own name. *So held*, where the owner of letters-patent assigned them, together with all claims for damages by reason of the previous infringement of them, and the assignee filed his bill to recover such damages.
2. *Root* v. *Railroad Company*, 105 U. S. 189, cited and approved.

APPEAL from the Circuit Court of the United States for the Northern District of Illinois.

The case is stated in the opinion of the court.

*Mr. Gilbert M. Speir, Jr., Mr. Ephraim Banning,* and *Mr. Thomas A. Banning* for the appellant.

*Mr. L. L. Bond* and *Mr. E. A. West* for the appellees.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This appeal brings into review the decree dismissing, on a general demurrer, the amended bill of Hayward, the complainant, for want of equity.

The case made by the amended bill and exhibits is this:

Aaron H. Allen was the owner of reissued patent No. 1126, granted to him upon the surrender of original patent No. 12,017, dated Dec. 5, 1854, for a new and useful improvement in seats for public buildings. It was extended for seven years from Dec. 5, 1868, and consequently expired by limitation Dec. 4, 1875. By virtue of certain written instruments, set out as exhibits to the bill, the complainants claimed to be the sole and exclusive owner in equity of all claims for damages arising out of, or occasioned by, infringements of the reissued patent, committed after Sept. 18, 1869, and of all claims for gains and profits, derived by others by reason of such infringement.

The first of these instruments is dated Sept. 18, 1869. Allen thereby grants to J. W. Schermerhorn & Co. " the sole right and privilege of manufacturing and selling school furniture, made according to " the reissued patent, " for a tilting seat on the lever principle," subject to the terms and conditions of an indenture between the parties, which, however, is not set out. On April 22, 1881, John H. Platt, as assignee of James W. Schermerhorn, George M. Kendall, and George Munger, bankrupts, transfers to the complainant all the interest of the bankrupts in the Allen patent, and all causes of action arising to him, as assignee of the bankrupts, by reason of his interest in the said patent, and especially his claim in a certain suit then pending, brought by Allen in the Circuit Court of the United States for the Southern District of New York against the city of New York.

The second and only other instrument of title exhibited is an assignment from Allen, the patentee, to the complainant, dated March 8, 1880, whereby Allen transfers to him and to his assigns all his right and interest in the suit, mentioned in the assignment from Platt, against the city of New York, " together with all claims for damages arising since the eighteenth day of September, 1869, against any persons, firms, or corporations, by reason of infringements of letters-patent of the United States for a tilting seat supported on the lever principle," being the reissued patent specified in the bill. And the complainant is thereby further constituted the attorney in fact of Allen, irrevocably, in his name, to demand and recover all such dam-

ages, for his own use, paying all expenses, but accounting for thirty per cent of all sums recovered, to Allen, until the latter shall have received $6,600, and no longer.

It is alleged in the amended bill that in the suit against the city of New York a decision was reached sustaining the validity of the patent, but no final decree therein has been entered; and that, owing to the delays incident to that litigation, while waiting for a decision upon the validity of the patent, neither Allen nor the complainant has been in a situation to prosecute other infringers, or sooner to file this bill.

It is also alleged in the amended bill that the defendants have infringed the said letters-patent since Sept. 18, 1869, and until the expiration thereof, and in violation thereof " have manufactured, sold, and used the said invention for improvements in seats for public buildings, patented as aforesaid, whereby great injury resulted to your orator, and great gains and profits accrued to the said defendants," for which, accordingly, an account is prayed, and a decree for the amount thereof and for damages.

The original bill was filed Dec. 1, 1881, Allen being a co-complainant, and the amended bill May 25, 1882, the original bill having been dismissed as to him.

It is manifest that the right claimed by the complainant receives no support from any title derived from Allen through J. W. Schermerhorn & Co., for the right of the latter under the instrument of Sept. 18, 1869, was that of mere licensees. They could maintain no action for damages or profits against infringers, for they had no interest in the patent, nor was there any assignment to them of any right of action accrued or to accrue to Allen. In addition to this, the license itself only extended to the manufacture and sale of school furniture, and there is no allegation in the amended bill that the defendants had infringed the patent in that respect. That branch, therefore, of the complainant's bill is removed from the case, and he is relieved from the embarrassment which, it is alleged in argument, is occasioned by the uncertainty produced by alternative and inconsistent titles, and which is made one of the grounds for claiming the right to resort to equity.

The case, then, is left to stand upon the right derived under

the contract between Allen and the complainant of March 8, 1880, and the single question remains, whether the assignee of a chose in action may proceed by bill in equity to enforce for his own use the legal right of his assignor, merely because he cannot sue at law in his own name.

It is admitted that, according to the rule declared and established in *Root* v. *Railway Company*, 105 U. S. 189, the patentee could not, in his own name and right, maintain the present suit, and the original bill was accordingly dismissed as to him. To permit the appellant to proceed in equity, upon the mere ground of the assignment to him, would be substantially to abrogate that rule.   The principle was stated to be that the relief granted to a patentee in equity, by the recovery of profits and damages against an infringer, was " incidental to some other equity, the right to enforce which secures to the patentee his standing in court ; " that " the most general ground for equitable interposition is to insure to the patentee the enjoyment of his specific right by injunction against a continuance of the infringement ; but that grounds of equitable relief may arise other than by way of injunction ; " and among these, by way of illustration, was mentioned that " where the title of the complainant is equitable merely ; " but it is the obvious meaning of the passage to limit the exception to cases where the purpose and necessity of the resort to a Court of Chancery are to enforce the peculiar equity personal to the complainant, and not merely the legal right of which he is the beneficial owner. If the assignee of the chose in action is unable to assert in a court of law the legal right of the assignor, which in equity is vested in him, then the jurisdiction of a Court of Chancery may be invoked, because it is the proper forum for the enforcement of equitable interests, and because there is no adequate remedy at law ; but when, on the other hand, the equitable title is not involved in the litigation, and the remedy is sought merely for the purpose of enforcing the legal right of his assignor, there is no ground for an appeal to equity, because by an action at law in the name of the assignor the disputed right may be perfectly vindicated, and the wrong done by the denial of it fully redressed.   To hold otherwise would be to enlarge the jurisdiction of courts of equity to an extent the limits of which could

not be recognized, and that in cases where the only matters in controversy would be purely legal rights.

In opposition to this view, a passage from Story, Eq. Jur., sect. 1057 *a*, is cited and relied on in argument, in which that learned author, after stating that it had been " recently held that the assignee of a debt, not in itself negotiable, is not entitled to sue the debtor for it in equity, unless some circumstances intervened which show that his remedy at law is, or may be, obstructed by the assignor," adds, that " this doctrine is apparently new, at least, in the broad extent in which it is laid down, and does not seem to have been generally adopted in America.. On the contrary, the more general principle established in this country seems to be, that wherever an assignee has an equitable right or interest in a debt or other property (as the assignee of a debt certainly has), then a court of equity is the proper forum to enforce it; and he is not to be driven to any circuity by instituting a suit at law in the name of the person who is possessed of the legal title." In the next paragraph, however, it is admitted that, " if the assignment be of a contract involving the consideration and ascertainment of unliquidated damages, as in case of the assignment of a policy of insurance, then, unless some obstruction exists to the remedy at law, it would seem that a court of equity ought not, or might not, interfere to grant relief; for the facts and the damages are properly matters for a jury to ascertain and decide. But the same objection would not lie to an assignment of a bond or other security for a fixed sum."

The doctrine referred to in this passage, as " apparently new," is that stated by Vice-Chancellor Shadwell, in *Hammond* v. *Messenger*, 9 Sim. 327, 332, where he said: " If this case were stripped of all special circumstances, it would be simply a bill filed by a plaintiff, who had obtained from certain persons to whom a debt was due, a right to sue in their name for the debt. It is quite new to me, that, in such a simple case as that, this court allows, in the first instance, a bill to be filed against the debtor by the person who has become the assignee of the debt. I admit that if special circumstances are stated, and it is represented that notwithstanding the right which the party has obtained to sue in the name of the creditor, the creditor

will interfere and prevent the exercise of that right, this court will interpose for the purpose of preventing that species of wrong being done; and if the creditor will not allow the matter to be tried at law in his name, this court has a jurisdiction in the first instance to compel the debtor to pay the debt to the plaintiff, especially in a case where the act done by the creditor is done in collusion with the debtor. If bills of this kind were allowable, it is obvious they would be pretty frequent; but I never remember any instance of such a bill as this being filed, unaccompanied by special circumstances."

And, accordingly, the Supreme Judicial Court of Massachusetts, in *Walker* v. *Brooks*, 125 Mass. 241, held, that " a court of equity will not entertain a bill by the assignee of a strictly legal right, merely upon the ground that he cannot bring an action at law in his own name, nor unless it appears that the assignor prohibits and prevents such an action from being brought in his name, or that an action so brought would not afford the assignee an adequate remedy." And Gray, C. J., delivering its opinion in that case, referring to the passage from Story to the contrary, said: " But the adjudged cases, including those cited by the learned commentator, upon being examined, fail to support his position, and show that the doctrine of *Hammond* v. *Messenger* is amply sustained by earlier authorities in England and in this country." This conclusion he then verifies by a review of the cases from the time of Lord Chancellor King, whose decision in *Dhegetoft* v. *London Assurance Co.*, Mos. 83, was affirmed in the House of Lords; 4 Bro. P. C. (2d ed.) 436; followed by Lord Hardwicke, in *Motteux* v. *London Assurance Co.*, 1 Atk. 545; and Lord Loughborough, in *Cator* v. *Burke*, 1 Bro. Ch. 434, to Vice-Chancellor Knight Bruce, in *Rose* v. *Clarke*, 1 You. & Col. C. C. 534; and in this country from *Carter* v. *United Insurance Co.*, 1 Johns. (N. Y.) Ch. 463, by Chancellor Kent; and *Ontario Bank* v. *Mumford*, 2 Barb. (N. Y.) Ch. 596, 615, by Chancellor Walworth; including several others in various States. He then points out that in *Riddle* v. *Mandeville*, 5 Cranch, 322, the principal case cited by Mr. Justice Story in support of his statement, a bill in equity by an indorsee of a promissory note against a remote indorser was sustained by this

court, upon the ground that in Virginia, the law of which governed the case, no remedy at law could be had against him, except by the circuitous course of successive actions by each indorsee against his immediate indorser, and that, in that particular case, the intermediate party was insolvent; and that Mr. Chief Justice Marshall, who delivered the opinion in that case, did not consider it as establishing the general proposition for which it was cited, was manifest from his opinion in the later case of *Lenox* v. *Roberts*, 2 Wheat. 373, in which the assignee of all the property of a banking corporation was allowed to maintain a bill in equity in his own name upon a promissory note which had not been formally indorsed to him, for the reason that, " as the act of incorporation had expired, no action could be maintained at law by the bank itself."

The same doctrine had received a pointed application by this court in the case of *Thompson* v. *Railroad Companies*, 6 Wall. 134. That case was commenced in the State court in Ohio, by the parties in interest, in their own name, although only beneficially entitled, in accordance with the code of the State. It was removed into the Circuit Court, where the plaintiffs filed a bill in equity, because their title was equitable merely. A decree in their favor, on appeal, was reversed by this court. Mr. Justice Davis remarking, in the opinion, that " this case does not present a single element for equitable jurisdiction and relief," and added: " The absence of a plain and adequate remedy at law is the only test of equity jurisdiction, and it is manifest that a resort to a Court of Chancery was not necessary, in order to enable the railroad companies to collect their debt."

That decision has been cited with approval in the subsequent cases of *Walker* v. *Dreville*, 12 Wall. 440; *Van Norden* v. *Morton*, 99 U. S. 378; and *Hurt* v. *Hollingsworth*, 100 id. 100.

In the present case, the complainant had a plain and adequate remedy at law by an action in the name of Allen, whose willingness to permit his name to be so used, in accordance with his agreement to that effect, is manifest, from the fact that in the original bill he was named as one of the complain-

ants.   There was, therefore, no error committed by the circuit court in dismissing the amended bill for want of jurisdiction in equity.

*Decree affirmed.*