HEWITT and others *v.* PENNSYLVANIA STEEL Co.

*(Circuit Court, E. D. Pennsylvania.* May 26, 1885.)

PATENTS FOR INVENTION—EXPIRATION OF PATENT—NEW PARTIES.

On January 15, 1882, complainants filed their original bill, averring infringement of their patent, and praying for an injunction and accounting, and, after several amendments, on October 4, 1882, the heirs at law of one of the patentees were made parties. The patent expired on July 28, 1882. *Held* that, as the court could not have acquired jurisdiction until October 4, 1882, when all the parties in interest were brought in, and the patent had expired before that time, the bill should be dismissed.

In Equity.

*Strawbridge & Taylor* and *Benjamin F. Thurston,* for complainants.

*Wayne McVeigh* and *Joseph C. Frailey,* for defendant.

BUTLER, J. On the fifteenth of January, 1882, the original bill was filed. The complainants were Abram S. Hewitt and Edward Cooper, both of New York, and the defendants were the Pennsylvania Steel Company, Samuel M. Felton, Eben F. Barker, Henry C. Spackman, Charlemagne Tower, Edmund Smith, William Matthews, and William M. Spackman, all of the city of Philadelphia; Luther S. Bent, of Steelton, Pennsylvania, and Francis Thompson, of Boston, Massachusetts. The bill set forth, in the usual form,—

*First,* the grant and issue of certain letters patent of the United States, numbered 72,061, and dated December 10, 1867, to Emile Martin and Pierre E. Martin, both of Paris, France, for an alleged "new and useful improved process for refining and converting cast-iron into cast-steel, and other combinations of iron and carbon," by which letters patent there was secured to them, their heirs, executors, administrators, or assigns, for the term of 17 years from the tenth day of December, 1867, the full and exclusive right of making, using, and vending the said invention or discovery, throughout the United States and the territories thereof; *second,* the surrender of said letters patent No. 72,061, by said Emile and Pierre E. Martin, and the grant and issue to them thereupon of reissued letters patent No. 3,096, and dated August 25, 1868, for the same invention "for the residue of said term of seventeen years;" and, *third,* that "your orators further show unto your Honors that on or about the thirteenth day of May, 1875, the said Pierre E. Martin and George Martin, *l'administrateur delegue de la succession de* Mr. Emile Martin, deceased, by an assignment in writing of that date, sold, assigned, and transferred unto Abram S. Hewitt and Edward Cooper, your orators, the whole right, title, and interest in and to said letters patent and invention,

which assignment was duly recorded in the patent-office of the United States, as by said assignment, or a duly-authenticated copy thereof, and the certificate of such recording thereto affixed, ready in court to be produced, will fully and at large appear. And your orators further show that your orators have extensively applied the said process to practical use, and have been, and, but for the infringement hereinafter complained of, would still be, in the undisturbed possession, use, and enjoyment of the exclusive privileges secured by the said letters patent, and in receipt of the profits of the same."

It is next charged that the defendants have infringed the patented improvement, "the exclusive right and privilege to make, u; e, and vend which, throughout the United States and the territories thereof, is thus by law vested in your orators." The relief prayed comprises injunctions, preliminary and perpetual, an account of profits, and, in addition thereto, an assessment of damages, in right of the complainants' title as set forth.

On the sixteenth of February, 1882, complainants' counsel filed an amendment, bringing in the name of Pierre E. Martin as a plaintiff, and making other changes in the bill. On the fourth of March, 1882, the plaintiff again amended by bringing in Pierre Blaise, George Martin, and others, "heirs at law of Emile Martin, deceased." On the sixth of March, 1882, another amendment (which need not be more particularly referred to at this time) was made. On the twenty-third of June, 1882, the defendants filed a demurrer to the bill, as defective for want of proper parties. October 2, 1882, this demurrer was argued, and the following order made:

Now, this second of October, 1882, this cause coming on to be heard on the demurrer filed by the defendant to the complainants' bill as amended, and counsel for the respective parties having been heard thereupon, and the same having been considered by the court, it is adjudged, ordered, and decreed that said demurrer be and the same is hereby sustained, with leave to the complainants to amend their bill by making the administrator of Emile Martin a party complainant, if they shall be so advised.

On the fourth of October, 1882, the bill was again amended as follows: *First,* by inserting after the words "republic and," in line 25, page 1, of said bill, "Abram S. Hewitt, above named, in his capacity as administrator upon the estate of Emile Martin, deceased;" and, *second,* by inserting after line 20, page 6:

And your orators further represent that the above-named heirs at law of the said Emile Martin, deceased, afterwards made application to the register for the probate of wills and granting letters of administration in and for the city and county of Philadelphia, in the commonwealth of Pennsylvania, and within the Eastern district thereof, for letters of administration to be granted on the estate of the said Emile Martin, *alias* Marie Francois Emile Martin, within the said city and county, to Abram S. Hewitt; and such proceedings were had that afterwards, to-wit, on the twentieth day of July, A. D. 1882, letters of administration upon the said estate, goods and chattels, rights and credits, which were of the said Emile Martin, were by said register granted and committed to Abram S. Hewitt, who has duly accepted said trust, and has qualified himself according to law, whereby there has devolved upon the said Abram S. Hewitt the right, title, and interest which the said Emile Martin had at the time of his decease in and to said before-mentioned letters

patent, and he holds the legal title to the same (being one undivided half of said letters patent) in trust for the said heirs at law of the said Emile Martin, deceased, and hereby appears and makes himself a party complainant in this bill of complaint.

To the bill as thus finally amended the defendants filed an answer on November 16, 1882.

Has the court jurisdiction? Two propositions involved in this inquiry need no argument, and scarcely require citation of authority. *First*, that courts of equity can exercise jurisdiction in patent causes only where the circumstances call for the peculiar forms or character of relief which these courts administer. Ordinarily the relief required is that afforded by the writ of injunction. Where, therefore, the circumstances do not call for the services of this writ, the jurisdiction of equity does not ordinarily apply. *Root* v. *Railway*, 105 U. S. 189; *Hayward* v. *Andrews*, 106 U. S. 675; S. C. 1 Sup. Ct. Rep. 544. *Second*, that to sustain such a suit the entire right in the patent must be represented. *Gayler* v. *Wilder*, 10 How. 494; *Blanchard* v. *Eldridge*, 1 Wall. Jr. 339.

The patent in the case before us expired on the twenty-eighth of July, 1882. This is not only shown by the proofs, but was admitted on the argument. The original bill was filed in January preceding. At this time, therefore, (January,) if the proper parties were before the court, the plaintiff had a case calling for the services of an injunction, and the court consequently had jurisdiction. As we have seen, several changes were made in the parties between the time of filing the bill and the expiration of the patent, the last bringing in the heirs at law of Emile Martin, deceased. In this state of the record, could the plaintiffs have had a decree? Were the proper parties in court? It seems quite plain that these questions must receive negative answers. The right of Pierre E. Martin (consisting of one-half interest in the patent) alone was represented. No one of the several persons who had sought to do so, had any authority to bring in or intermeddle with the remaining half which had belonged to Emile Martin. It is not pretended that the attempted transfer of this interest to Hewitt and Cooper had any effect. It is clear that the interest did not descend to Emile's heirs, and that they had no authority whatever respecting it. It was personal property, and passed to the administrator, to be administered as all other personalty of the deceased. This is so fully settled by authority as to dispense with discussion. *Shaw Valve Co.* v. *City of New Bedford*, 19 FED. REP. 753; *Bradley* v. *Dull*, 19 FED. REP. 913. It was not until the following October, several months after the patent had expired, that the interest of Emile Martin was brought in. Up to this period, therefore, no case was presented, and the defendant, in the light of subsequent developments, was entitled to a dismissal of the bill. It may be assumed that, had the court been aware of the facts now ascertained, the amendment would not have been allowed. Upon

what valid ground should the administrator have been permitted to come into equity, at a time when he was entitled to no equitable relief, by attaching himself to a suit previously and improperly commenced? He could not get in by means of a new bill. The only remedies he required were those afforded by law. And upon what just ground could Pierre Martin, and those who with him claimed to own the other half, ask to have the administrator brought in? They had ceased to be entitled to any form of equitable relief. The only remedies they could then invoke are those afforded by the law. The object, apparently, was to deprive the defendants of trial by jury in an action at law,—a right to which they were clearly entitled at the time. In *Allison* v. *Herring*, 8 Law J. Eq. (N. S.) 223, the court refused leave to amend under circumstances very similar to those of this case. The amendment here was properly allowed in view of the facts disclosed at the time. To avoid injustice, however, the filing of the amendment should now be treated as the commencement of the suit. This view finds ample support in authority. Such an amendment, made under such circumstances, bears no resemblance to ordinary amendments which are held to relate back to the time of filing the bill. They present, in effect at least, a new case, involving different parties. In *Miller's Heirs* v. *McIntyre*, 6 Pet. 63, the court so treated an amendment by which an additional defendant had been brought in after the statute of limitations had run against the plaintiff. In principle this case cannot be distinguished from the one before us. True, the party there brought in was a defendant, while here he is a plaintiff. This difference, however, is immaterial. The injustice of depriving the defendant in the former case of the bar of the statute, by tacking him on to a suit previously commenced, is not plainer than that of depriving the defendants here of their right to trial at law, and compelling them to appear and litigate in a court whose jurisdiction can only be made to cover the case by allowing the administrator to attach himself to the bill, as an original party, after the right to sue in equity had been lost. It is not necessary to enlarge on this subject.

Treating the suit as commenced when the amendment was filed in October, as we must, it is clear that the court has no jurisdiction, and the bill must be dismissed.