SOUTHERN TEXTILE MACHINERY CO. v. FAY STOCKING CO.

(District Court, N. D. Ohio, E. D.    July 3, 1917.)

No. 340.

1. PATENTS ⬳202(1)—TITLE—ASSIGNMENT PENDING APPLICATION.

An assignment of a pending application with the right to the patent to be issued thereon, duly filed and recorded in the patent office, vests the legal title to the patent, when issued, in the assignee, although it is issued in the name of the assignor.

2. PATENTS ⬳202(1)—CONVEYANCE OF RIGHTS IN—ASSIGNMENT OR "LICENSE."

If an instrument transfers a patentee's entire right to all or an undivided interest in the patent, as fully as such right is conferred on him by the grant, either within the entire United States or a definite subdivision thereof, a good legal title will pass, but unless it conveys the full right to make, use, and vend, or an interest therein, the instrument is, at most, a mere license.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, License.]

3. PATENTS ⬳286—SUIT FOR INFRINGEMENT—TITLE TO SUSTAIN.

An instrument executed by the joint owners of a patent, granting to a corporation the exclusive right to manufacture and sell the patented article during the life of the patent, or so long as it shall remain a solvent going concern, does not vest the corporation with title to the patent which will sustain a suit for infringement against third parties in its name alone.

In Equity. Suit by the Southern Textile Machinery Company against the Fay Stocking Company. Leave granted to amend bill by joining additional complainants.

Obed C. Billman, of Cleveland, Ohio, for complainant.

A. V. Groupe and C. N. Anderson, both of Philadelphia, Pa., and Hull, Smith, Brock & West, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. Complainant's bill charges infringement by defendant of letters patent No. 1,050,432, issued by the United States Patent Office, January 14, 1913, to Edwin O. Davis, for a machine for uniting knit fabrics, of which letters patent complainant claims to be the sole and exclusive owner. The answer denies complainant's title and the infringement of the letters patent, and also sets up the invalidity thereof for various reasons. The questions to be decided are: (1) Whether the complainant has shown title in itself to said letters patent. (2) Whether the defendant is guilty of infringement. (3) Whether the claims of said letters patent relied on are valid.

The bill alleges that on or about November 20, 1912, Davis, by certain instruments in writing then executed and delivered, and by mesne assignments theretofore executed and delivered, assigned and transferred the entire right, title, and interest in and to the improvements and letters patent; that these instruments in writing were recorded the 19th of December, 1912, in the United States Patent Office, and that by virtue thereof the complainant then became, and ever since the dates of such assignments has been, and is now, the sole and exclusive owner thereof. These instruments in writing, it will be noted, all bear

a date prior to the date of issue of the letters patent, and that the issue was thereafter made to and in the name of Davis.

The answer, for want of knowledge and information, denies these allegations of title and demands proof. Under equity rule 30 [198 Fed. xxvi, 115 C. C. A. xxvi], this denial for want of knowledge is the equivalent of a specific denial, and puts on the complainant the burden of proving its title.

Complainant, in support of the issue of title thus tendered, produced and introduced in evidence a number of instruments in writing, eight in all, being numbered "Complainant's Exhibits No. 1" to "No. 8," inclusive. No other evidence on this issue is tendered.

Exhibit No. 1, dated September 15, 1908, is an agreement between E. O. Davis (the inventor and patentee) and R. E. Hearne, of the first part, and R. B. Phillips and H. F. Drenk, of the second part. This agreement recites that Davis is the inventor of three separate and distinct machines or attachments to be used in the manufacture of hosiery and other similar fabrics. One of these is described as a looping machine, which is the one that is the subject-matter of the patent now in litigation. This invention, it is recited, was then owned jointly by Davis and Hearne, the former having an 80 per cent. and the latter a 20 per cent. interest therein, and in any patents that might be issued on the same. This agreement, by proper and sufficient language, assigns, transfers, and readjusts the ownership of this invention so that Davis retains a 35 per cent. interest, Hearne a 15 per cent. interest, and a 25 per cent. interest each is assigned to Phillips and Drenk. It does not contain any express direction that any patent issued for said invention should be issued in the name of the several assignees.

This agreement was made in contemplation that a corporation should thereafter be organized for the manufacture of the machine, embodying this invention and other inventions described in the agreement, and that Phillips and Drenk should perform services and advance money required to get started and in operation the manufacturing of such machines. Other provisions are contained in it, regulating the rights and duties of the several parties until the corporation, in whose name the manufacturing was to be done, was in practical running condition. These provisions it is not necessary to state in detail. The parties, it was agreed, were to have issued to them the stock of the corporation thus to be organized in the same percentage proportions as their interests in said inventions.

This agreement further states that the business of this corporation—

"shall be the manufacture and sale under permits or license from the parties hereto as individuals of machinery embodying the above-named inventions."

It also provides that the parties—

"shall lease to said corporation or give it permits or licenses to manufacture and sell machinery embodying said inventions, but said inventions or patents are not to be sold to said corporation, and are to remain the property of the parties hereto as individuals, and said lease or permits are not to be for a longer time than said corporation shall remain a going concern; and any lease or permit shall contain stipulations that if said corporation makes an assign-

ment for the benefit of creditors, or goes into or is forced into bankruptcy, or goes into the hands of a receiver or other officers or court to be wound up or run, then said lease or permits are to cease at once, and the inventions and patents revert to the parties 'hereto as individuals in the proportions above named."

Exhibit No. 2 is an agreement dated March 20, 1909, and recorded in the United States Patent Office December 19, 1912. All four joint owners of the inventions described in the first agreement are the first parties thereto, and the complainant, the Southern Textile Machinery Company, is the second party. This agreement recites the application by Davis for the patents and the ownership thereof by the first parties in the percentage proportions already given, and—

"for the further consideration of all the capital stock of said company, including the stock of the incorporators and original subscribers, namely, twenty thousand dollars of the capital stock of said company to be held and owned by the parties of the first part hereto in the percentage proportions [already given],"

provides that—

"the said parties of the first part hereby lease and grant to the party of the second part the exclusive right or license on the conditions hereinafter named. however, to manufacture or have manufactured and to sell said machines or appliances or any improvements that may hereafter be made thereon and patented, from now on until the expiration of the patents or prospective patents on same."

One of the prospective patents therein referred to is the looping machine now in litigation.

The conditions "hereinafter named" provide that the lease or license was not to last for a longer time than the Southern Textile Machinery Company remained a going concern, and that, if the conditions recited in the quotation above from the first agreement should come to pass, the lease or license to the complainant should immediately cease, and all said inventions and patents, and the right to manufacture and sell, should revert to the first parties in the same percentage proportions. Such title as was passed to Phillips and Drenk by the first agreement, and as is not transferred by this agreement, still remains in them so far as the record in this case discloses.

Exhibit No. 3, dated March 22, 1909, is between Davis and Hearne, of the first part, and Phillips and Drenk, of the second part. It modifies in part the obligations assumed by Phillips and Drenk in the first agreement, but does not modify the provisions above stated as to the title to the patents. On the contrary, the last paragraph thereof reiterates that provisions relating to title and ownership shall remain unchanged, and that a license to manufacture and sell may be granted to the complainant, as stated in the former contract.

Exhibit No. 4, dated April 13, 1909, and recorded in the United States Patent Office December 19, 1912, is between E. O. Davis, R. B. Phillips, and H. F. Drenk, Hearne not being a party to it. Its provisions show that a disagreement had arisen between the parties thereto about the .conduct of the business of the Southern Textile Machinery Company (complainant herein). This agreement was made to

adjust all differences and to eliminate future disagreements. Its provisions are not otherwise material to the present issue.

Exhibit No. 5, dated April 23, 1909, and recorded in the United States Patent Office February 7, 1910, is an express assignment from Edwin O. Davis to Phillips and Drenk of each a 25 per cent., and to Hearne a 15 per cent., interest in the invention covered by application serial No. 491,511, being the application on which the letters patent now in litigation was issued. It also authorizes and requests the Commissioner of Patents to issue said letters patent to the respective parties in these percentage proportions.

Exhibit No. 6, dated August 10, 1910, and recorded in the United States Patent Office September 1, 1910, is an express assignment from Davis and Hearne to the complainant of their retained 50 per cent. interest in the inventions covered by application serial No. 491,511, being the one here involved. It does not authorize nor request that the patents to be issued shall be issued in the name of the complainant, the Southern Textile Machinery Company. It recites that a 50 per cent. interest had previously been conveyed to Phillips and Drenk. It is made subject to the terms and conditions of a contract and assignment of even date, entered into between Davis and the Southern Textile Machinery Company, which is referred to and made a part thereof, but which does not appear in the record. It is inferable from a later writing that it provided merely for the payment of certain moneys by the complainant to Davis.

Exhibit No. 7, dated November 20, 1912, and recorded in the United States Patent Office December 19, 1912, is in form an absolute assignment from Davis to the Southern Textile Machinery Company (complainant herein) of all Davis' right, title and interest in certain inventions and patents to be obtained therefor. No more definite description, by number or otherwise, of the inventions or patent applications are given, but it may be assumed that the invention and patent now in litigation was included.

Exhibit No. 8, dated November 20, 1912, and recorded in the United States Patent Office December 19, 1912, is a formal assignment from Davis to the complainant herein, the Southern Textile Machinery Company, of his inventions covered by several applications, including application serial No. 491,511. It requests the Commissioner of Patents to issue the letters patent in the name of the company.

For reasons not explained, the letters patent were issued thereafter in the name of Edwin O. Davis, and not to any one or all of his assignees. No assignment or transfer after issue in his name appears to have been made by him to complainant or any other person.

Defendant's contention is that, inasmuch as the letters patent were issued to Davis, the entire legal title thereto is still in him, and that, if this be not true, Phillips and Drenk are the joint owners with complainant of each a one-fourth interest therein.

[1] As appears from the foregoing statement, Davis and Hearne reserved a 50 per cent. interest in the invention covered by the patent application, and this interest was absolutely assigned to the complainant. The instruments of assignment, however, were executed and re-

corded in the Patent Office at a date prior to the date of issue of the letters patent. It does not, in my opinion, follow from these facts that the complainant has not acquired a complete legal title to this 50 per cent. interest. It is settled law that an assignment vests legal title in the assignee, even though executed prior to the issue of the letters patent, and the letters patent are thereafter issued in the name of the assignor. This is established by the following authorities: Walker on Patents (5th Ed.) §§ 274, 274a; Gayler et al. v. Wilder, 10 How. 477, 13 L. Ed. 504; Railroad Co. v. Trimble, 10 Wall. 367, 19 L. Ed. 948; Wende v. Horine (C. C.) 191 Fed. 620.

[2] A different situation, as appears from the above statement, exists with respect to the other 50 per cent. interest originally assigned to Phillips and Drenk. They have not executed any instruments in writing purporting to assign that interest to the complainant. It may be admitted that any instrument in writing which purports to convey the inventor's or patentee's entire right to his patent or to an undivided interest therein will be regarded as sufficient to convey title, even though the words "assignment" and "transfer" are not employed. If the instrument does in fact transfer the inventor's or patentee's entire right to all or an undivided interest therein as fully as such right is by the patent conferred on him, either within the entire geographical limits of the United States or a definite subdivision thereof, a good legal title will pass. This law is established by the following authorities: Walker on Patents (5th Ed.) § 274; Rapp v. Kelling (C. C.) 41 Fed. 792; Johnson R. R. Signal Co. v. Union Switch & Signal Co. (C. C.) 59 Fed. 23; Paulus v. Buck Mfg. Co., 129 Fed. 594, 64 C. C. A. 162; Waterman v. Mackenzie, 138 U. S. 252, opinion 256, 11 Sup. Ct. 334, 34 L. Ed. 923.

The entire right acquired by one to whom letters patent are issued is defined by section 4884, United States Revised Statutes (Comp. St. 1916, § 9428). This section confers for a term of 17 years "the exclusive right to *make, use and vend* the invention or discovery throughout the United States, and the territories thereof." The monopoly thus created is an entirety, and cannot be divided into parts, except as is authorized by the United States Statutes. These statutes authorize the patentee or his assignee, by an instrument in writing, to transfer "the exclusive right to make, use and vend the invention throughout the United States"; also to transfer an undivided part or share of that exclusive right, or to transfer that exclusive right within and throughout a specified part of the United States. If the instruments in writing, properly interpreted, confer or transfer a lesser interest than any one of these, the right transferred will at most be only a license. See Waterman v. Mackenzie, 138 U. S. 252, 255, 11 Sup. Ct. 334, 34 L. Ed. 923, and cases therein cited.

[3] The instruments in writing here relied on, say in explicit terms that Drenk and Phillips are not parting with their title or ownership. They do not purport to sell or transfer their interest in the patent applied for, either in the entire United States or in a specified part of it. This limitation or reservation is reserved and expressly set forth in all the writings to which either of them is a party. They purport

to give, or to be willing to give, permits or licenses to *manufacture and sell* only. These permits or licenses are coextensive, both as to duration and extent, with the letters patent, except for the forfeiture conditions contained in the written instruments. These clauses stipulate that in the event of complainant's insolvency, assignment for creditors, appointment of a receiver, etc., the lease, permits, or licenses shall at once cease, and the inventions and patent shall revert to Phillips, Drenk, and others. These forfeiture conditions, it might be argued, are in the nature of conditions subsequent, and until the conditions were broken and the rights of forfeiture exercised the entire title and interest have passed to complainant.

I might be inclined to adopt this view, and to regard the instrument in writing as an absolute assignment, conferring a good title, at least, in equity, except for the limited nature of the lease, permit, or license granted or agreed to be given by these instruments. It will be observed the right thus agreed to be given is only to *manufacture and sell;* it does not include the exclusive right to *use* the invention.

In view of the authorities presently to be cited, it must be held that complainant has acquired, both at law and in equity, something less than the entire right conferred by the letters patent upon the patentee. The law in this respect has been established by many decisions. The exclusive right thus acquired by a patentee consists of three things: (1) The right to make, (2) the right to use, and (3) the right to vend the invention or discovery. If any one of these three is not assigned or granted, the grantee acquires, at most, only a license. See the following: Gayler et al. v. Wilder, 10 How. 477, 494, 495, 13 L. Ed. 504; Mitchell v. Hawley, 16 Wall. 544, 21 L. Ed. 322; Hayward v. Andrews, 106 U. S. 672, 1 Sup. Ct. 544, 27 L. Ed. 271; Waterman v. Mackenzie, 138 U. S. 252, opinion 255–257, 11 Sup. Ct. 334, 34 L. Ed. 923.

In Waterman v. Mackenzie, supra, 138 U. S. page 256, 11 Sup. Ct. page 335 [34 L. Ed. 923], Mr. Justice Gray says:

"Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions. For instance, a grant of an exclusive right to make, use, and vend two patented machines within a certain district is an assignment, and gives the grantee the right to sue in his own name for an infringement within the district, because the right, although limited to making, using, and vending two machines, excludes all other persons, even the patentee, from making, using, or vending like machines within the district. Wilson v. Rousseau, 4 How. 646, 686 [11 L. Ed. 1141]. On the other hand, the grant of an exclusive right under the patent within a certain district, which does not include the right to make, and the right to use, and the right to sell, is not a grant of a title in the whole patent right within the district, and is therefore only a license. Such, for instance, is a grant of 'the full and exclusive right to make and vend' within a certain district, reserving to the grantor the right to make within, the district, to be sold outside of it. Gayler v. Wilder, above cited. So is a grant of 'the exclusive right to make and use,' but not to sell, patented machines within a certain district. Mitchell v. Hawley, 16 Wall. 544 [21 L. Ed. 322]. So is an instrument granting 'the sole right and privilege of manufacturing and selling' patented articles, and not expressly authorizing their use, because, though this might carry by implication the right to use articles made under the patent by the licensee, it certainly would not authorize him to use such articles made by others.

Hayward v. Andrews, 106 U. S. 672 [1 Sup. Ct. 514, 27 L. Ed. 271]. See, also, Oliver v. Rumford Chemical Works, 109 U. S. 75 [3 Sup. Ct. 61, 27 L. Ed. 862]."

This being the law, complainant has a good title as to one half of the letters patent now in litigation, and, at most, a license as to the other half. In this situation, the parties entitled to maintain an action for an infringement has often been under consideration, and it is settled law that a licensee, or one of two or more joint owners of a letters patent, cannot maintain a suit in equity to enjoin infringement without uniting the licensor or the other joint owners. See the following: Gayler et al. v. Wilder, 10 How. 477, 494, 495, 13 L. Ed. 504; Waterman v. Mackenzie, 138 U. S. 252, 255, 11 Sup. Ct. 334, 34 L. Ed. 923; Walker on Patents (5th Ed.) § 399.

In Waterman v. Mackenzie, supra, 138 U. S. page 255, 11 Sup. Ct. page 335 [34 L. Ed. 923], Mr. Justice Gray says:

"In equity, as at law, when the transfer amounts to a license only, the title remains in the owner of the patent; and suit must be brought in his name, and never in the name of the licensee alone, unless that is necessary to prevent an absolute failure of justice, as where the patentee is the infringer and cannot sue himself. Any rights of the licensee must be enforced through or in the name of the owner of the patent, and perhaps, if necessary to protect the rights of all parties, joining the licensee with him as a plaintiff."

Walker on Patents (5th Ed.) § 399, says:

"Owners in common of patent rights must sue jointly for their infringement, or the defendant may plead in abatement or demur, or, in suit in equity, move to dismiss. This rule applies where a patentee has assigned an undivided part of his patent, and also to cases where the owner of the patent has granted an undivided interest therein, in that part of the territory of the United States wherein the infringement sued upon was committed. In the first of these cases the action must be brought by the patentee and assignee jointly, and in the other case it must be jointly brought by the owner of the patent and his grantee. Indeed, the rule necessarily applies to every case where a plurality of persons own the undivided interest in a patent right, whether in the whole or only in a part of the territory of the United States."

These rules of law are based on the fundamental consideration that all persons interested in the subject-matter of litigation or to be affected by a decree should be made parties, because it is the aim of courts of equity to do complete justice, and to settle the rights of all parties in one suit, in order that litigation may end and a multiplicity of suits be avoided. A decree does not bind absent parties, and they may thereafter harass the defendant with another action based on the same cause of action. A defect of parties in this sense is so vital that a court cannot proceed to judgment under such conditions.

So far as the record discloses, this is the situation now presented. It will be necessary that new parties be made, or sufficient facts alleged, showing either a lack of interest, or an adequate reason for not making them parties, before this cause can proceed further.

Leave will be given complainant, either by amendment to the present bill, or by intervention at the instance or on behalf of Phillips and Drenk, or in other appropriate manner, to obviate the difficulties disclosed by the present state of the record. If this cannot be done, a decree dismissing the bill will have to be entered.