# OLIVER & Others *v.* RUMFORD CHEMICAL WORKS.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF TENNESSEE.

Argued October 10th and 11th, 1883.—Decided October 29th, 1883.

*License—Patent—Survivorship.*

The reissued letters patent No. 2,979, granted to the Rumford Chemical Works, June 9th, 1868, for an "improvement in pulverulent acid for use

in the preparation of soda powders, farinaceous food, and for other purposes," claimed, in claim 1, "as a new manufacture, the above-described pulverulent phosphoric acid," and, in claim 2, the manufacture of such acid, and, in claim 3, the mixing with flour of such acid and an alkaline carbonate, so as to make the compound self-raising, on the application of moisture or heat, or both. There was transferred to M., by the Rumford Chemical Works, the exclusive right to make, sell, and use, in a specified territory, for five years, self-raising flour by the use of the acid, he agreeing to make the flour, and to use his skill to introduce it, and to purchase all the acid from the grantor. M. died in less than three months from the date of the grant: *Held*, under the provisions of §§ 11 and 14 of the act of July 4th, 1836, 5 Stat. 121, 123, that the right acquired by M. was only that of a licensee ; that the instrument of license did not carry such right to any one but him personally ; and that such right did not, on his death, pass to his administrator, so as to authorize a suit at law, founded on the license, to be brought in the name of the grantor, for the use of the administrator, to recover damages for an infringement of the patent committed after the death of M., by the manufacture and sale of self-raising flour, by the use of such acid, in said territory.

Action on the case for infringement of patent. The facts were stated by the court in the following language :

On the 9th of June, 1868, reissued letters patent No. 2,979 were granted to the Rumford Chemical Works, a corporation of Rhode Island, for an "improvement in pulverulent acid for use in the preparation of soda powders, farinaceous food, and for other purposes." The original patent, No. 14,722, was granted to Eben Norton Horsford, April 22d, 1865, for fourteen years, for an "improvement in preparing phosphoric acid as a substitute for other solid acids," and was reissued to the Rumford Chemical Works, as No. 2,597, May 7th, 1867, for an "improvement in the manufacture of phosphoric acid and phosphates for use in the preparation of food and for other purposes."

The specification of reissue No. 2,979 sets forth the mode of preparing the acid, which is a dry pulverulent acid, described as having the capacity of being intimately mixed with dry alkaline carbonates, or other sensitive chemical compounds, without decomposing them or entering into combination with them, except upon the addition of moisture or the application of artificial heat. It says :

"This requires that the phosphoric acid, or acid phosphates, be

mixed with some neutral agent, as flour or starch, gypsum, etc., so that action of the acid shall be prevented while dry, and shall, when moisture or heat is applied, be prompt, thorough, and equally diffused. . . . It may, among other uses, be mixed with dry alkaline carbonates, carbonate of potassa, or carbonate of soda, and remain in this state without evolution of carbonic acid until moistened or heated, thus making it a substitute for cream tartar and tartaric acid in the preparation of yeast powder or baking powder. . . . It . . . is suited to be employed as the acid ingredient in the preparation of self-raising farinaceous food. In order to make an article possessing these qualities, and suited to this office, it is necessary that a powder should be made which can be not only evenly comminuted and diluted, but one which shall have so little affinity for the moisture of the atmosphere that it may be mixed with flour and bicarbonate of soda in the practical preparation of self-raising flour."

The claims of reissue No. 2,979 are four in number, as follows:

"1. I claim, as a new manufacture, the above-described pulverulent phosphoric acid. 2. I claim the manufacture of the above-described pulverulent phosphoric acid, so that it may be applied in the manner and for the purposes above described. 3. I claim the mixing, in the preparation of farinaceous food, with flour, of a powder or powders, such as described, consisting of ingredients of which phosphoric acid, or acid phosphates, and alkaline carbonates, are the active agents for the purpose of liberating carbonic acid, as described, when subjected to moisture or heat, or both. 4. The use of phosphoric acid or acid phosphates, when employed with alkaline carbonates, as a substitute for ferment or leaven in the preparation of farinaceous food."

On the 1st of February, 1869, the following instrument in writing was executed and delivered by the Rumford Chemical Works to one Allen F. Morgan:

"To all people to whom these presents shall come, the Rumford Chemical Works, a corporation transacting business in East Providence, in the State of Rhode Island, sends greeting : Know ye that the said corporation, in consideration of the agreement, of even date herewith, entered into between it and Allen F. Mor-

gan, of Memphis, in the county of Shelby and State of Tennessee, does hereby sell, assign and transfer unto the said Allen F. Morgan the right to use, within the territory described in said agreement, Horsford's patent cream of tartar substitute, for the purpose of manufacturing within said territory self-raising cereal flours, with the right to use and sell the flours so manufactured; to have and hold and exercise such rights within the limits aforesaid, for and during the time and under and subject to the conditions and limitations named and specified in the agreement aforesaid, of even date herewith, to which reference is hereby made as a part hereof."

On the same day Morgan executed and delivered to the Rumford Chemical Works the following instrument in writing:

"To all men to whom these presents shall come: Know ye, that because the Rumford Chemical Works, a corporation located at and doing business in the town of East Providence, in the State of Rhode Island, has licensed and granted unto Allen F. Morgan, of the city of Memphis, county of Shelby and State of Tennessee, the exclusive right to manufacture, sell and use during the time of five years from the date hereof, the article known as self-raising flour, from cereals, by the use of Horsford's patent pulverulent phosphoric acid, in the following described territory, to wit: Beginning at the point where the northern boundary of the State of Tennessee touches the Mississippi River; thence southerly along the said river to and including Vicksburg; thence easterly along the line of the Mississippi Southern R. R. to Jackson; thence northerly along the line of the Mississippi Central R. R. to Granada; thence northeasterly to the junction of the eastern boundary line of Alabama with the southern boundary line of Tennessee; thence along the eastern boundary line of Middle Tennessee (so called) to the northern boundary line of Tennessee, and westerly along said boundary line to the point of beginning, by an instrument in writing bearing even date herewith, which is made a part of this agreement, and because of other good and sufficient reasons moving him thereto, that he has agreed, and by these presents does covenant and agree, to and with the aforesaid Rumford Chemical Works, that he will immediately commence the manufacture of self-raising flour in accordance with the written instructions furnished by

Statement of Facts.

the said Rumford Chemical Works, as to proportions and quality of flour, and that he will use all his business tact and skill, and all other means necessary to introduce and sell the same, and to make the sale thereof as large as in any way possible in the territory aforesaid, during the continuance of the license aforesaid, and no longer, and to sell the said self-raising flour nowhere but in the territory specified, except upon the written consent of the said Rumford Chemical Works. And I further agree to accept in the aforesaid license such rights as are covered by the patents granted to Eben N. Horsford, and by him assigned to the said Rumford Chemical Works, and to maintain them at my own cost and expense in suits at law, whenever it shall be in my judgment necessary so to do, and to avail myself of such advice, counsel and assistance as the said Rumford Chemical Works may elect to give in said suits ; and to purchase all of the acid used in making our said self-raising flour of the Rumford Chemical Works or of their agents, as directed ; and that in case of my failure to perform the covenants and agreements hereby entered into, it shall be lawful for the said Rumford Chemical Works to annul and revoke their said license to me, and to terminate this agreement. The use of said phosphoric acid by families for domestic purposes shall not be construed as a violation of this agreement."

On the 12th of April, 1870, the patent was duly extended for seven years from April 22d, 1870. On the 21st of May, 1870, the extended term was assigned by Horsford to the Rumford Chemical Works. Morgan died on the 19th of April, 1869. In July, 1869, his widow, Kate G. Morgan, was appointed administratrix of his estate. She afterwards intermarried with J. N. Payne. A suit at law was brought, in 1875, in the name of the Rumford Chemical Works, for the use of J. N. Payne and his wife, Kate G. Payne, in the Circuit Court of the United States for the Western District of Tennessee, against J. N. Oliver and others, partners, constituting the firm of Oliver, Finnie & Co., to recover damages for the infringement by the defendants, for the period from April 1st, 1870, to February 1st, 1874, of the rights of the said Kate G. Payne and her husband, under said patent, by making and selling

self-raising flour by the use of Horsford's patent pulverulent phosphoric acid in the territory before named. The theory of the suit was that the right of Morgan became vested in his administratrix, as a personal asset, and continued under the extension, and that the suit brought would lie for infringements of such right committed prior to the expiration of the five years from February 1st, 1869. The suit was tried by a jury, and resulted in a verdict for the plaintiffs for $3,538.97 damages, and a judgment in their favor for that amount, with costs. To review that judgment this writ of error is brought.

Mr. *Estes* and Mr. *Ellett* for the plaintiffs in error.

Mr. *George Gantt* and Mr. *Isham G. Harris* for the defendants in error.

Several points were argued. The following is a summary of the argument of the defendants' counsel on the point on which the case turned in the opinion:

This is an assignment or grant of an exclusive right in and under the patent throughout a specified part of the United States. A patent may embrace more than one invention. Curtis on Patents, § 110. This patent embraces four. *Rumford Chemical Works* v. *Lauer*, 10 Blatchford, 122. Either of these could be assigned separately. *Adams* v. *Burke*, 17 Wall. at p. 456; *Dorsey Rake Co.* v. *Bradley*, 12 Blatchford, 202. There can be a grant of a limited number of machines. *Wilson* v. *Rousseau*, 4 How. at p. 686; *Washburn* v. *Gould*, 3 Story, 122. Morgan had the exclusive right as to the third and fourth claims. Nothing was left in the Rumford Works except a reservation which was a license back. *Littlefield* v. *Perry*, 21 Wall. 205, and cases cited above.

This is an exclusive license giving the plaintiff exclusive right in the designated territory, which he can enforce. *Mitchell* v. *Hanly*, 16 Wall. 544.

Morgan's license was not a personal privilege which terminated at his death. If the parties in this case had intended to limit this grant to Morgan's lifetime it would have been easy for them to have said so. Instead of doing that, they give it

for a fixed time, and the only condition upon which it can be terminated before the end of that time is the failure of the grantee to perform his agreements under the contract. Certainly his personal representatives can perform them in his shoes. All the intendments and presumptions of law are against defeating the deceased's rights under his contracts. 1 Parsons on Contracts, 111.

MR. JUSTICE BLATCHFORD delivered the opinion of the court. After reciting the facts in the above language, he continued.

Various questions are presented by the record and have been discussed in argument, but there is one which goes to the foundation of the suit, and upon which our views are such as to make it unnecessary to consider any other. The court charged the jury that the interest of Morgan in the patent did not terminate at his death, but passed to his administratrix. The defendants excepted to this charge. The evidence was that Morgan died on the 19th of April, 1869, and the defendants asked the court to instruct the jury that the privilege conferred on Morgan by the instrument of February 1st, 1869, from the Rumford Chemical Works to him, terminated at his death, and did not pass to his administratrix, and that they should find for the defendants, if they believed that Morgan died on the 19th of April, 1869. The court refused to give such instruction, and the defendants excepted.

It is apparent that what was granted to Morgan was only the exclusive right to use, within the territory specified, the patented acid in making self-raising flour, and to use and sell in said territory the flour so made. The acid used in making the self-raising flour was all of it to be purchased from the Rumford Chemical Works, or its agents. No right was granted to make the acid, or to use it or sell it otherwise than as an ingredient in the self-raising flour. The effect of the grant made by the two instruments of February 1st, 1869, is subject to the provisions of § 11 of the act of July 4th, 1836, 5 Stat. 121, which was the statute in force at the time, and provided as follows:

"Every patent shall be assignable at law, either as to the
VOL. CIX—6

whole interest or any undivided part thereof, by any instrument in writing ; which assignment, and also every grant and conveyance of the exclusive right under any patent, to make and use, and to grant to others to make and use, the thing patented within and throughout any specified part or portion of the United States, shall be recorded in the Patent Office within three months from the execution thereof."

By § 14 of the same act it was provided that damages for making, using or selling the thing whereof the exclusive right is secured by a patent:

"May be recovered by action on the case, in any court of competent jurisdiction, to be brought in the name or names of the person or persons interested, whether as patentees, assignees or as grantees of the exclusive right within and throughout a specified part of the United States."

Morgan was not an assignee of the entire right secured by the patent, nor of any undivided part of such entire right, nor of the exclusive interest in such entire right for the territory specified.  He did not acquire the whole of the exclusive right or legal estate vested in the Rumford Chemical Works by the patent for the said territory, leaving no interest in his grantor for that territory, as to anything granted by the patent.  It is well settled that a transfer of a right such as Morgan acquired is not an assignment, nor such a grant of exclusive right as the statute speaks of, but is a mere license.  Curtis on Patents, 3d ed. § 179; *Gayler* v. *Wilder*, 10 How. 477, 494.  This being so, the instrument of license is not one which will carry the right conferred to any one but the licensee personally, unless there are express words to show an intent to extend the right to an executor, administrator or assignee, voluntary or involuntary.

In *Troy Iron and Nail Factory* v. *Corning*, 14 How. 193, 216, this court said:

"A mere license to a party, without having his assigns or equivalent words to them, showing that it was meant to be assignable, is only the grant of a personal power to the licensee, and is not transferable by him to another."

In the present case there are no words of assignability in either instrument. The right is granted to Morgan alone, to him personally, with an agreement by him that *he* will enter on the manufacture of the self-raising flour, and that he will use all *his* business tact and skill to introduce and sell the flour. It is apparent that licenses of this character must have been granted to such individuals as the grantor chose to select because of their personal ability or qualifications to make or furnish a market for the self-raising flour, and thus for the acid, all of which was to be purchased from the grantor. The license was made revocable by the grantor on the failure of Morgan to perform his covenants and agreements.

We have not overlooked the fact that the privilege granted to Morgan was to continue for five years. This means no more than that he was to have it for five years, if he should live so long, and if the patent should not have expired. But it cannot have the effect to impart assignability to the privilege, or to prolong its duration beyond that of his life.

Respect for the Supreme Court of Tennessee induces us to say that we have carefully examined the opinion of that court in *Oliver* v. *Morgan*, 10 Heiskell, 322. That was a suit brought by the widow and administratrix of Morgan against Oliver, Finnie & Co., in a court of the State, to recover compensation under an agreement made between him and them February 15th, 1869, and which was to continue till April 1st, 1870, whereby he was to prepare self-raising flour for them under the license to him from the Rumford Chemical Works, and they were to pay him so much a barrel. In that suit it was held that Mrs. Morgan could recover not only for the time prior to Morgan's death, but for the subsequent time, and that the license to Morgan vested in him an interest which passed, at his death, to his personal representative. The proceedings in that suit are made a part of the record on this writ of error. But the suit in the circuit court was tried wholly on the view that the question as to the construction of the instruments of February 1st, 1869, was an open one, and was a question of general law, and not one as to a rule of property, and that there was nothing in the former suit which, as *res judicata*, could be

binding between the parties in this suit, as an estoppel. There is nothing in the pleadings which raises the question of such an estoppel. The lower State court having, in the prior suit, rendered a judgment for the plaintiff, the Supreme Court of the State, while giving the interpretation before mentioned of the rights of Morgan, reversed the judgment for errors in other respects, and awarded a new trial. Afterwards there was, in the lower court, a verdict by consent, followed by a judgment for the plaintiff, for a less sum than the amount of the first verdict and judgment. Moreover, the present suit is one in a court of the United States, brought under the provisions of an act of Congress, for the infringement of letters patent. The former suit arose out of a contract between Morgan and Oliver, Finnie & Co., and was brought to recover damages for the breach of that contract. Under these circumstances, the question as to the rights of Morgan under the patent must be regarded as one to be passed upon in this suit as an original question, as if there had been no former suit. Giving to the opinion of the Supreme Court of Tennessee that consideration which is due to the force of reasoning in the views which it announces, we are unable to concur in the construction it gave to the license to Morgan. Accordingly:

*The judgment of the Circuit Court is reversed, with direction to award a new trial.*