Charles McFadden, Belle McFadden, Appellees, v.
F. H. Alexander, Appellant.

**Patents:** SALE OF EXCLUSIVE RIGHTS: FALSE REPRESENTATIONS: RESCIS-
SION. The transfer of an exclusive right under a patent for cer-
tain territory is an assignment of the patent itself to that extent
and vests title therein in the assignee, under which he may sell
the same either in whole or in part or maintain an action to
restrain its infringement; but the sale and assignment merely of
the right of manufacture and sale of the product to be produced
under the patent does not create in the assignee any right in
the patent itself; and representations made, either written or
oral, that the assignor owns and transfers an exclusive right
under the patent, when he in fact owns a mere license to manu-
facture and sell the product, is a material misrepresentation which
will authorize the assignee to rescind the contract of purchase,
regardless of any fraudulent intent on the part of the assignor.

**Same:** RATIFICATION. The right of an assignee of a patent to rescind
his contract on the ground of false representations of the as-
signor is not affected by any ratification by the patentee himself,
after the assignee has discovered the fraud and repudiated the
contract: Nor will the fact that the assignee might have per-
fected his title as against the patentee affect the right of rescis-
sion, as he is not bound as matter of law to follow that course.

**Same.** The fact that the assignee of a patent accepted under false
representations may have received some benefit, or manufactured
articles pursuant to the assignment and prior to the discovery of
fraud, will not affect the right of rescission, where he offered
to return the benefits received.

**Same:** PROOF OF KNOWLEDGE OF FRAUD. It is not necessary in an
equitable action to rescind a contract on the ground of false rep-
resentations to prove knowledge of the fraud by the other party.

*Appeal from Shelby District Court.*—Hon. O. D. Wheeler,
Judge.

Thursday, April 4, 1912.

SUIT in equity to recover back money paid upon certain contracts, and to rescind the contracts. There was a decree for the plaintiffs, and defendant appeals.—*Affirmed.*

*Edward S. White,* for appellant.

*Turner & Cullison* and *Cullison & Cullison,* for appellees.

EVANS, J.—By the contracts involved in this suit the plaintiffs and their assignor purported to purchase of the defendant an interest in a patent. They claim to have discovered later that the defendant had no title or interest in such patent, and they aver that their signatures to the contracts were obtained by false representations. Plaintiffs' action was brought in the first instance as for damages. The defendant pleaded an equitable defense, and upon his motion the case was transferred to the equity side. Thereafter, by various amendments to their petition, the plaintiffs asked to recover back their purchase money as having been paid without consideration. The defendant filed a counter claim for $200 upon a promissory note of the plaintiffs, being the unpaid part of the purchase money. In reply to such counterclaim the plaintiffs pleaded the same facts as above stated as a defense thereto, and tendered return of all property received and pleaded rescission. The pleadings are not in model form, but the substance of the issue as made is that plaintiffs declare upon a rescission of the contract as one having been entered into through false representation, and they ask to recover back the consideration paid thereon.

Under one of the contracts referred to, the plaintiffs purported to purchase said patent to the extent of its exclusive use for the county of Audubon, Iowa. Under the other, one Oathout, plaintiffs' assignor, purported to purchase the same to the extent of its exclusive use for the county of Cass. The following is a copy of the Oathout contract:

Whereas, I, F. H. Alexander, of Shelby, county of Shelby, state of Iowa, have obtained the entire control and management of patent No. 925,948 for which Jeremy Robertson did obtain letters of patent of the United States for cement trough and valve, which letters of patent are numbered 925,948, and bear date June 22, 1909; and whereas, I now have sole control of said patent and all rights under the same in the below recited territory; and whereas L. S. Oathout of Shelby county and state of Iowa is desirous of acquiring an interest in the same: Now, therefore, to all whom it may concern, be it known that, for the consideration of the sum of $300 payable as follows: $150, Feb. 1st, 1910; $150, Feb. 1st, 1911, I, the said F. H. Alexander, have sold, assigned and transferred and by these presents do sell, assign and transfer unto the said L. S. Oathout all the right, title and interest in and to same invention as secured to me by said letters patent for, to and in the county of Cass, Iowa, and for, to and in no other place or places, the same to be held and enjoyed by the said L. S. Oathout within and throughout the above specified territory, but not elsewhere, for his own use and behoof and for the use and behoof of his legal representatives, to the full end of the term for which said letters patent are or may be granted as fully and entirely as the same would have been held and enjoyed by me had this assignment and sale not been made. . . . It is hereby fully understood and agreed that any failure of said L. S. Oathout to make payment as agreed above that this contract and assignment shall be null and void and said L. S. Oathout hereby releases all claims to any interest in said territory.

A similar contract was entered into with the plaintiffs for Audubon county. The false representation charged is that the defendant falsely represented that he "had the sole control of said letters patent and all rights under the same in the state of Iowa." One Robertson was the patentee and real owner of said patent. Whatever right Alexander had was acquired under the following written contract with Robertson:

This article of agreement, made and entered into this

12th day of May, A. D. 1909, by and between James Robertson of the county of Shelby, state of Iowa, of the first part, and F. H. Alexander of the county of Shelby, state of Iowa, of the second part, witnesseth: That from and after this date said F. H. Alexander is to have complete management of the manufacture and sales of the cement stock waterer patented by said party .of the first part in the year 1908; also the sole management of the manufacture and sales of the automatic pressure valve patented by said· party of the first part in the year 1908 within the state of Iowa on the condition and consideration hereby agreed to that said party of the second part is to pay all expenses necessary for the manufacture and sales of said stock waterers and said pressure valves, and divide equally all profits over and above said expenses with said party of the first part.  The net profits being thereby divided equally by and between party of the first part and party of the second part. · And it is further agreed that party of the second part is to receive 25 percent and party of the first part 75 percent of the profits received from without the state of Iowa.

I.  The contention of plaintiff-appellee is that the contract between Alexander and the patentee constituted a mere license at best, and that it conveyed no interest what-

1. PATENTS: sale of exclusive rights: false representations: rescission.

ever in the patent as such; whereas the contracts entered into by Alexander with the plaintiffs and their assignor purported to convey an interest in the patent.  It is well settled that the transfer of an exclusive right under a patent for a specified territory in the United States is an assignment of the patent to such extent and vests in the assignee a title.  Under such a title, the assignee may sell the same either in whole or in part and may maintain action to restain infringement. *Wilson v. Rousseau,* 45 U. S. (4 How.) 646 (11 L. Ed. 1141); *Waterman v. McKenzie,* 138 U. S. 252 (11 Sup. Ct. 334, 34 L. Ed. 923).  Such an assignment carries with it for the specified territory every right which the patentee himself could have exercised.  This in-

cludes, not only the right to make, sell, and use the patented invention within the specified territory, but the right, also, to deal with the patent itself as such and to sell the same for the entire territory or for a part thereof, or to grant mere license thereunder. The above contracts entered into by Alexander with the plaintiffs and their assignor clearly purport to sell the patent as such for the specified territory.

Turning now to the contract entered into between Alexander and the patentee, it is the contention of appellee that this contract does not purport to convey any interest in the patent, and that it only purports to give to Alexander the management of the "manufacture and sale" of the product to be produced under the patent. He may thereunder sell, not the patent, but the "stock waterer" and the "pressure valve." He may sell the "golden eggs," but not the "goose." We think it must be said that under this contract Alexander obtained only a license. The contract did not amount to an assignment or transfer of the patent itself, either in whole or in part. *Gayler v. Wilder,* 51 U. S. (10 How.) 477 (13 L. Ed. 504); *Mitchell v. Hawley,* 83 U. S. (16 Wall.) 544 (21 L. Ed. 322); *Hayward v. Andrews,* 106 U. S. 672 (1 Sup. Ct. 544, 27 L. Ed. 271); *Oliver v. Rumford,* 109 U. S. 75 (3 Sup. Ct. 61, 27 L. Ed. 862).

That Alexander made the representation complained of is made to appear in the recitals of the contracts themselves. Oral evidence to the same effect is contained in the record. The representation was a material one. The rights acquired under a mere license are materially different in their nature from those acquired by an assignment of an interest in the patent itself. This is particularly so as to the right of transfer or sale of the subject-matter. The falsity of representation complained of, therefore, is sufficient ground to entitle the plaintiff to a rescission in equity regardless of any fraudulent intent on the part of Alexander, unless the right has been lost by reason of some of the affirmative

matters which are urged upon our attention by appellant and which we now proceed to consider.

Robertson, the patentee, lived in the immediate neighborhood of the parties, and they were acquainted with him. He aided the plaintiffs in the manufacture of molds, and assisted and encouraged them in the manu-

2. SAME: ratification.   facture of the product. It is urged, therefore, that he fully ratified the contract entered into by Alexander. It does not appear from the record whether Robertson saw the contract, or that he knew that it departed in its form from the authority which he conferred upon Alexander in his contract with him. We see nothing in such conduct of Robertson that is not consistent with the contract entered into between him and Alexander. His conduct in assisting in the manufacture of the molds and the product was strictly along the line of the authority conferred by him upon Alexander. It is also urged that he has never interfered in any manner with the full enjoyment by the plaintiffs and their assignor of the rights contracted for with Alexander. Robertson appeared as a witness upon the trial on behalf of the defendant, and lent his aid to the attempted enforcement of the contract. It does appear from the record, however, that he had in conversation with the parties denied their interest in the patent, and denied the authority of Alexander to confer any such interest upon them. This was the occasion of the taking of counsel by the plaintiffs and their assignor. It was in this manner that they discovered that the contracts entered into by Alexander with them exceeded his rights as they appeared from his contract with Robertson. They therefore repudiated the contracts. No change of front thereafter by Robertson could be effective to ratify the contract against the will of the other parties. There is a further consideration that, if it be true that Robertson had ratified the contract of these parties by his conduct, the right conferred thereby upon these parties was in the nature of a mere cause of action.

If they desired to sell to a third party, they could not show a good title, except by "selling a law suit" against Robertson. If it were true, therefore, that the conduct of Robertson was a sufficient ratification of the sale by Alexander, and that the plaintiffs could thereby have perfected their title by demand or suit against Robertson, they were not bound as a matter of law to follow such course. It rested with them to elect whether they would do so or whether they would repudiate the contract because of the alleged false representation.

It is also urged that the plaintiffs and their assignor received benefits from this contract. They received some molds which they offered to return; but it appears, also, that they manufactured some of the patented articles and sold a very few. It does not appear that any of the articles referred to have any value beyond the cost of manufacture. If they have a right to rescind, they are not subject to penalty for the manufacture of articles prior to the discovery of the misrepresentation.

3. Same.

It is urged that knowledge of the falsity of the representation on the part of Alexander was not proved, and that there was no intentional fraud on his part. In an action in equity to rescind a contract on the ground of false representation, it is not necessary to prove *scienter*. *Maine v. Investment Co.*, 132 Iowa, 272; *Mohler v. Carder*, 73 Iowa, 582; *Hunter v. League C.*, 96 Iowa, 473. Although the plaintiffs in this case alleged intentional fraud on the part of Alexander, no finding to that effect was made by the trial court. As a matter of law Alexander must be held to know the provisions of his contract with Robertson on the one hand, and those of his contract with the plaintiffs on the other. However, he may not have fully understood the legal import of the provisions of his contract, and he may not have appreciated the difference in legal import of the two contracts. Upon the whole record, we are impressed that no moral tur-

4. Same: proof of knowledge of fraud.

pitude appears as against Alexander or his agents, and that there was no actual intent to defraud. This concession, however, is by no means fatal to the right of plaintiffs to repudiate the contract, and to recover back the consideration paid. This, of course, would necessarily cancel their note for the unpaid installment. This was the only relief awarded by the decree. The decree entered below must therefore be *affirmed.*