OPINION. Van Fossan, Judge: We have three issues presented in these proceedings. The first is common to both cases and involves the treatment to be given to certain sums received by both petitioners during the taxable years here under review. Specifically, the question is whether such amounts are to be characterized as ordinary income taxable under section 22 (a) of the Code[1] or as capital gains derived from the sale of a patent and taxable pursuant to sections 117 (a) and (b), Internal Revenue Code.[2] During the year 1942 petitioners had pending before the United States Patent Office an application for letters patent to cover the manufacture of certain type outsoles known as rope soles. The method of fabricating this product had been conceived and developed by petitioner together with his wife. After petitioner had previously assigned the foregoing application to his wife, they together entered into an agreement with the Norwalk Co. whereby the latter ivas “* * * granted the sole and exclusive right and license to manufacture and sell [emphasis added] * * *” the rope sole product in the United States. This agreement was later extended to include and to grant substantially identical rights and privileges to the Panther-Panco Rubber Company, Inc. It is the income received by the Greggs under this original agreement, and the extension thereof, that we here seek to categorize for tax purposes. The transfer of a patent results in a capital gain or loss if the patent was a capital asset in the hands of the transferor and if the transaction amounted to a sale or assignment as distinguished from a mere license agreement. See, Edward G. Myers, 6 T. C. 258. Here, there appears to be no doubt that the patent covering the rope soles was a capital asset in Lynne Gregg’s hands at the time she and petitioner entered into the agreement with the Norwalk Co. At least, respondent does not contend otherwise and all the evidence before us points in that direction. However, even though the patent be a capital asset, the sums which the Greggs received by reason thereof are not subject to the limitations of section 117, supra, unless the transaction with the Norwalk Co., as ultimately extended to Panther-Panco, constituted a sale of the patent rather than a mere license of rights therein. Whether the transaction resulted in a sale or a license is solely a question of interpretation involving the letter agreement between the parties. The label or name borne by this instrument of transfer is not determinative. Nor is the form thereof necessarily conclusive. Cleveland Graphite Bronze Co., 10 T. C. 974, affd. 177 F. 2d 200. A patent is a franchise which consists of the three-fold right to exclude all others from making, from using and from vending the thing patented without permission of the patentee. Bloomer v. McQuewan, 14 How. 539. Any portion of the rights granted may be sold or transferred to another with varying legal effects. In one of the leading authorities dealing with the transfer of patents, Waterman v. Mackenzie, 138 U. S. 252, the Supreme Court said, inter alia: Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions. For instance, a grant of an exclusive right to make, use, and vend two patented machines within a certain district, is an assignment, and gives the grantee the right to sue in his own name for an infringement within the district, because the right, although limited to making, using and vending two machines, excludes all other persons, even the patentee, from making, using or vending like machines within the district. Wilson v. Rousseau, 4 How. 646, 686. Od the other hand, the grant of an exclusive right under the patent within a certain district, which does not include the right to make, and the right to use, and the right to sell, is not a grant of a title in the whole patent right within the district, and is therefore only a license. Such, for instance, is a grant of “the full and exclusive right to make and vend” within a certain district, reserving to the grantor the right to make within the district, to be sold outside of it. Gayler v. Wilder, above cited. So is a grant of “the exclusive right to make and use,” but not to sell, patented machines within a certain district. Mitchell v. Hawley, 16 Wall. 544. So is an instrument granting “the sole right and privilege of manufacturing and selling” patented articles, and not expressly authorizing their use, because, though this might carry by implication the right to use articles made under the patent by the licensee, it certainly would not authorize him to use such articles made by others. Hayward v. Andrews, 106 U. S. 672. See also Oliver v. Rumford Chemical Works, 109 U. S. 75. After setting forth the above factors as criteria for determining the ultimate legal effect of an agreement involving the transfer of an interest or right under a patent, the Supreme Court went on to hold that a grant of “* * * the sole and exclusive right and license to manufacture and sell * * *” the patented product throughout the nation without an express authorization for the use thereof, does not constitute an assignment or sale. Rather, the court said that such a grant is but a license and gives the licensee no right in his own name to sue a third person at law or in equity for an infringement of the patent. Waterman v. Mackenzie, sufra; Edward G. Myers, supra. The rationale of the Waterman case has subsequently been followed and reiterated on numerous occasions. For one such instance see, e. g., United States v. General Electric Co., 272 U. S. 476, wherein it was said that in order for a transaction to constitute an assignment or a sale there must be a conveyance of, “* * * (1) the exclusive right to make, use and vend the invention throughout the United States, or, (2) an undivided part or share of that exclusive right, or (3) the exclusive right under the patent within and through a specific part of the United States. * * *” See also, Cleveland Graphite Bronze Go., supra, at p. 988. It is settled law that anything short of the foregoing is not a sale or assignment but rather a license which gives the licensee no title to the patent. Waterman v. Mackenzie, supra; United States v. General Electric Co., supra; Gayler v. Wilder, 10 How. 477; Moore v. Marsh, 7 Wall. 515; Grown Co. v. Nye Tool Works, 261 U. S. 24. In the instant case, although the contract granted the right to manufacture and sell the products, this exclusive right was variously conditioned in that if the demand for the products exceeded Norwalk’s capacity and Norwalk did not wish to increase its facilities, petitioner could make other commitments and arrangements not damaging to Norwalk. The term of the agreement was for 1 year, subject to renewals of 1 year each, or to cancelation on 60 days’ notice by either party. Suits for infringement could be brought either by the Greggs or by Norwalk. These facts are all indicative of a license, not a sale and transfer of title. In the face of these and other facts incompatible with an idea of sale, and on reading the authoritative cases, we are led to conclude that the relationship between the parties was that of licensor and licensee, not that of an agreement of sale. We affirm the respondent and hold that the payments in question were royalties, taxable to petitioners as ordinary income and not taxable as capital gain. The next issue is whether petitioner is entitled to deduct $10,000 from his gross income for the taxable year 1943 as representing an ordinary and necessary expense in the form of compensation to his brother, Charles Gregg, for services allegedly rendered in 1941 in connection with the development of the patent here involved. In 1941 petitioner was engaged in manufacturing rubber soles at a plant located in Flemington, New Jersey. At the same time, he was in the process of developing a rope sole to be subsequently covered by the patent here involved. At the behest of his father, petitioner hired Charles to work in the Flemington plant at a salary of $50 per week. Charles was thus employed from January 15,1941, to July 15, 1941, during which period his regular working time was wholly devoted to manufacture of rubber soles at this plant. He worked on the development of the rope soles only in his spare time, i. e., on Saturdays, Sundays, and at night. Petitioner claimed the deduction of $10,000 on his original and amended returns for 1943 as compensation paid in that year for such services rendered by Charles in 1941. We have found as a fact, and petitioner concedes, that he paid only $2,300 to his father in 1943 for the use and benefit of Charles. Petitioner now takes the position on brief that such sum, being reasonable, was a proper, ordinary, and necessary expense of doing business and that as such, it is clearly allowable as a deduction for the year 3943. Petitioner has testified that for 6 months in 1941 Charles rendered certain developmental services outside his regular working hours in connection with the patent here involved. This testimony stands uncontradicted and we have no reason to disbelieve it. There is, however, no substantial evidence that the sum which we have found was paid petitioner’s father on behalf of Charles was, in fact, a reasonable amount for the 6 months of part time services that were actually rendered within the meaning of section 23 (a) (1) (A), Internal Revenue Code.[3] The $2,300 so paid for such part time services represents a rate of pay approximately twice that paid Charles for his regular full time services. Therefore, we have applied the rule of Cohan v. Commissioner, 39 F. 2d 540, and, having done the best we can with the evidence at hand, have concluded that $1,300 is the reasonable amount to be allowed as the deduction in 1943 for the services rendered by Charles. Accordingly, we so hold. Petitioner has argued on brief that the remainder of the $10,000, although not paid in 1943, was, nevertheless, paid in 1944 and should be allowed as a deduction in that year. What we have said above appertaining to the deduction in 1943 of the amount paid to Charles, and its reasonableness, is equally apposite here. However, even if we disregard that fact, the short answer to petitioner’s claim is that the issue as it relates to the taxable year 1944 has not been properly raised in the pleadings. On numerous occasions we have held that we will not, and cannot, consider issues which have not been'pleaded. Samuel E. Hirsch, 16 T. C. 1275. Consequently, we must decline to pursue the question further. There remains the issue which involves the determination of the appropriate year in which a deduction is allowable to petitioner for an admitted loss sustained on certain plasto-cloth material purchased by him and another in 1944. The question is purely one of fact. Those pertinent thereto have been fully set out above in our findings of fact and we see no pui'pose in repeating them here. Suffice it to say that the identifiable event definitely fixing the year in which the loss occurred was the sale of the material in March 1945 at a loss of $2,914.13. Respondent allowed such sum as a loss deduction in 1945. Respondent’s action as to this issue is sustained. Decisions will he entered wider Rule 50. SEC. 22. GROSS INCOME. (a) General Definition. — “Gross Income” includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * SBC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. — As used in this chapter— ******* (4) Long-term capital gain. — The term “long-term capital gain” means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income; ******* (b) Percentage Taken Into Account. — In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income : 100 per centum if the capital asset has been held for not more than 6 months; 50 per centum if the capital asset has been held for more than 6 months. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions : (a) Expenses.— (1) Trade or business expenses.— (A) In General. — All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * •